CLERK'S OFFICE
A TRUE COPY
Nov 22, 2023
s/ D. Olszewski
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

In the Matter of the Search of                    )
*(Briefly describe the property to be searched*    )
*or identify the person by name and address)*      )         Case No.    23    MJ    225
WASHINGTON & HENRY Google Accts:                   )
dkwash36@gmail.com & mybmw326@gmail.com (See       )         **Matter No.: 2023R00375**
Attachments)                                       )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A; over which this Court has jurisdiction pursuant to 18 U.S.C. §§ 2703 and 2711 and Federal Rule of Criminal Procedure 41.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(a)(1)(A); 922 (d); 922(g)(1); and 933 | Engaging in the Business of Importing/Manufacturing/ Dealing in Firearms; Sale or Transfer of a Firearm to a Prohibited Person; Unlawful Possession or Receipt of a Firearm by a Prohibited Person; Trafficking in Firearms |

The application is based on these facts:

See attached Affidavit.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_Matthew Ernst_
*Applicant's signature*

SA Matthew A. Ernst, ATF
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
telephone _____ *(specify reliable electronic means)*.

Date: ___11/22/2023___

_William E. Duffin_
*Judge's signature*

City and state:   Milwaukee, WI

Hon. William E. Duffin, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT
Matter No.: 2023R00375**

I, Matthew Ernst, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant for information associated with certain accounts that are stored at premises owned, maintained, controlled, or operated by Google LLC ("Google"), an electronic communications service and/or remote computing service provider headquartered in Mountain View, California.  The information to be searched is described in the following paragraphs and in Attachment A.

2.      I make this affidavit in support of an application for a search warrant for information associated with:

> a.   Gmail Account: dkwash36@gmail.com **(Target Account #1)**

> b.   Gmail Account: mybmw326@gmail.com **(Target Account #2)**

Information pertaining to **Target Account #1** and **Target Account #2** (collectively **"Target Accounts"**) is stored at premises owned, maintained, controlled, or operated by Google, LLC, an email and electronic services provider headquartered at 1600 Amphitheatre Parkway, Mountain View, CA 94043 (the "Target Provider"), further described herein and in Attachment A respectively (attached hereto and incorporated herein).

3.      This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Google to disclose to the government records and other information (including the content of communications) in its possession, pertaining to the subscriber and customer associated with Target Account 1 and Target Account 2, as further described in Section I of Attachment B.  Upon receipt of the information

described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

4.     I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (hereinafter "ATF"). As such, I am "an investigator or officer charged by the Attorney General with the duty of enforcing any of the criminal, seizure, or forfeiture provisions of the laws of the United States," within the meaning of Section 3051(a) of Title 18, United States Code; that is, an officer of the United States who is empowered by law to conduct investigations of, execute warrants and to make arrests for offenses against the United States and offenses enumerated in United States Code Title 18 and Title 21. I have been employed with the ATF since January 2015, and am currently assigned to the Milwaukee Field Office, under the Chicago Field Division. I completed Criminal Investigative Training and Special Agent Basic Training at the Federal Law Enforcement Training Center. I have received training on in connection with, and conducted investigations of violations of the National Firearms Act, Gun Control Act, and Title 18, United States Code, Sections 922(g), 924(c) and others. I have also received training and conducted investigations involving illicit drugs and the distribution of illicit drugs in violation of Title 21, United States Code, Sections 841, 843, 846 and others.

5.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code, Sections 922(a)(1)(A) (Engaging in the Business of Importing/Manufacturing/ Dealing in Firearms); 922(d) (Sale or

2

Transfer of a Firearm to a Prohibited Person); 922(g)(1) (Unlawful Possession or Receipt of a Firearm by a Prohibited Person); and 933 (Trafficking in Firearms) have been committed by Dwaine WASHINGTON ("WASHINGTON"), Kelvin HENRY ("HENRY"), and others known and unknown, as explained below. There is also probable cause to search the information described in Attachment A for evidence of these crimes and contraband or fruits of these crimes, as described in Attachment B.

## JURISDICTION

7.      This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated."

## PROBABLE CAUSE

### Search Warrant at Dwaine Washington's Residence

8.      On October 4, 2023, law enforcement agents executed a search warrant at the Milwaukee home of Dwaine WASHINGTON ("WASHINGTON") and located evidence that WASHINGTON was manufacturing privately made firearms ("PMF").

9.      In WASHINGTON's home, law enforcement recovered and/or located:

   a.   approximately nine (9) firearms (five (5) of which were PMF AR15-style pistols);

        1.   Four (4) of the AR15 pistol PMFs were all similar in make and style and were located on top of a dog kennel and in the living room.

   b.   seven (7) PMF jigs/molds (five (5) of which were pistol jigs/molds and two (2) were AR15 jigs/molds);

3

       c.   drill bits, grinders, drill presses, Dremel(s) and Dremel attachments, vices, and a router

       d.   various firearm parts and accessories; and

       e.   plastic shavings from PMF jigs and/or frames/receivers also known as "swarf," and other tools in the basement.

10.    Based on training and experience, your affiant knows that a polymer 80 jig provides the builder with the tools, measurements, and physical guides for fabricating an 80% lower or frame into a working firearm. An 80% lower is an object that is nearly a lower receiver and does not yet require serialization per US Federal Law and ATF rules. Jigs are kits that can consist of metal or plastic plates, bolts, drill bits, and end mill bits. Jigs are made specific to the firearm being built, whether it's an AR rifle/pistol, or a handgun, and therefore, parts and appearances may vary. Pistol jigs all use at least two side plates to secure the frame, like an AR jig does. Unlike the AR's 80% lowers, there is no solid metal cavity that needs to be milled on an 80% frame. Instead, smaller amounts of material are carved out to make room for the slide and barrel. These fabrication requirements dictate how each pistol jig is made. On polymer frames, cutting the excess material requires just a few minutes with a pair of snips. A polymer handgun jig has a simple outline built into the side plates to show the builder where to cut. The jig provides all the templates and guides for completing the frame inside. The jig has pre-drilled guide holes for the hole locations located on the side plates, and the recessed areas atop each plate indicate where to trim excess material for the slide rails. Inside, a guide shows how to shape the barrel seat. Instructions will indicate whether a builder must use a Dremel tool or cutting wheel. Jigs can also be reusable but are dependent on the material (i.e., metal or polymer). Metal jigs are considered reusable and can fabricate multiple

80% lowers and frames. Polymer jigs are considered disposable, but they can be reused if the builder is careful not to damage the jig while using it for completing a frame or lower.

11.    In total, WASHINGTON received and/or had order forms from online firearm retailers for approximately sixteen (16) AR-15 5.56/.223 and/or 300 Blackout build kits, twenty-one (21) AR-15 lower receivers, two (2) PMF Glock style pistol build kits and frames, in approximately a nine (9) month period. Your affiant knows, based on training and experience, that a build kit will only allow an individual to manufacture one (1) firearm and would require purchasing a frame or lower receiver to complete the build. Your affiant believes, based solely on the observed packing slips/invoices detailed above, that WASHINGTON could have manufactured/built approximately twenty-three (23) completed PMFs. It is important to note, only five (5) PMFs were recovered from WASHINGTON's residence during the execution of the state search warrant on October 4, 2023.

12.    In WASHINGTON's residence, agents located (1) an invoice from EP Armory, dated 07/19/2023, addressed to WASHINGTON, order #BTX126641, billing address; Dwaine Washington, 4945 N 42nd St, Milwaukee, WI 53209, 414-379-5631, dkwash36@gmail.com **(Target Account #1)** for one (1) Buy 3 get 1 free on EP80-2's with an order comment "I'd like to receive one in the sand color"; and (2) an invoice from EP Armory dated 08/08/2023, order #BTX126753, billing address; Dwaine Washington, 4945 N 42nd St, Milwaukee, WI 53209, 414-379-5631, dkwash36@gmail.com **(Target Account #1)** for one (1) Buy 3 get 1 free on EP80-2's with an order comment stating "I'd like to receive one in the sand color."  WASHINGTON later told your affiant that his phone number is 414-379-5631 and his email address is dkwash36@gmail.com **(Target Account #1)**.

13.     Also, in WASHINGTON's residence, agents located an invoice from EP Armory, a Texas based online firearm retailer. The invoice showed eight (8) AR style unfinished firearm lowers were shipped to "Kevin Henry" at 4308 N. 66th Street, Milwaukee, WI 53216, 414-484-5019, mybmw326@gmail.com **(Target Account #2)**.

**Dwaine Washington's Inculpatory Statements**

14.     In a statement to law enforcement on October 4, 2023, WASHINGTON admitted to receiving eight (8) EP Armory lowers, referring to unfinished 80% lowers. WASHINGTON stated that he received (8) AR style unfinished firearm lowers from a person who he declined to identify. WASHINGTON said he manufactured the AR style unfinished firearm lowers into full privately made firearms (PMFs) and provided four (4) completed PMFs to the person who supplied the eight (8) AR style unfinished firearm lowers. WASHINGTON said that he kept four (4) of the PMFs that he made from these unfinished lowers for himself. Those four firearms were recovered in his residence.

15.     The following is a summary of the interview of WASHINGTON and not intended to be a verbatim account unless as indicated below through the use of direct quotes:

a.  WASHINGTON stated he has worked at Purple Mountain Solutions for approximately two (2) years and just started making approximately $16.50 an hour.

b.  WASHINGTON stated he has been making PMFs for approximately three (3) years and during that time, he believes he has manufactured/built approximately twenty-five (25) PMFs. WASHINGTON stated the building/manufacturing of PMF's is relaxing to him and he enjoys doing it as a hobby. WASHINGTON stated he builds AR pistols, but has also built several conventional pistol style PMFs, referring to a Glock-style PMF. WASHINGTON stated he has built PMFs for himself, as well as

6

other individuals. WASHINGTON also stated that he has worked on other individuals' firearms (firearms that WASHINGTON did not build), in a gunsmithing role. WASHINGTON identified the individuals he builds and gunsmiths for as being family, friends, and friends of friends. WASHINGTON stated he believed these individuals to be responsible and on the up and up, referring to being able to legally possess firearms, but did state he has dealt with individual(s) who may have been a felon, but WASHINGTON was not certain of that being a fact.

c.  WASHINGTON stated when he does builds for other individuals there are times where WASHINGTON orders the parts from online firearm retailers on their behalf, has them shipped directly to his residence and builds the PMFs for them. Other times, people will order the parts themselves, have the parts shipped to their own residence, and then bring the parts over for WASHINGTON to build for them.

d.  WASHINGTON stated he has bartered PMF builds for other individuals as well as PMFs he has built for himself for items/services he needed and did not have the money to purchase. WASHINGTON admitted that he had lied and had built one (1) or two (2) PMFs for approximately $100.00 to $200.00 USC. WASHINGTON explained that he knew he would definitely be in trouble if he admitted to building PMFs in exchange for money. Your affiant took this statement to mean WASHINGTON knew manufacturing firearms for money was illegal. WASHINGTON did state there were occasions where he built PMFs for individuals for no exchange of money, goods, or services. Towards the end of the interview, WASHINGTON clarified that the PMF parts he had purchased and built for himself

7

were not purchased or built with the intent to sell, barter, or trade them. WASHINGTON also indicated he has not really been able to keep any of his personal firearms due to circumstances arising where he needed to trade/barter them for parts or services.

e.  WASHINGTON stated he has built approximately ten (10) AR15 pistol-style PMFs and brought them down to Crenshaw, Mississippi where his uncle, Leon PUE, resides. WASHINGTON stated he brought these ten (10) PMFs down there over time and the last time he was down there was approximately a year ago. WASHINGTON stated these ten (10) PMFs were still all at his uncle's residence. WASHINGTON stated he used these PMF's to hunt deer with on his uncle's property. WASHINGTON also stated these ten (10) PMFs do not have sights on them and when he is ordering the parts to build a PMF, he never orders sights for them. When affiant asked how he was able to hunt with a firearm with no sights, WASHINGTON stated he was a good shot. When asked why he left these PMFs in Mississippi, WASHINGTON stated they were left down there because there was less of a risk of them being stolen out of his uncle's rural residence than they would be at WASHINGTON'S residence.

f.  WASHINGTON was asked about the four (4) AR15 pistol PMFs which were recovered on top of the dog kennel and living room of WASHINGTON'S residence during the search warrant operation on October 4, 2023. WASHINGTON stated he built those four (4) PMFs the previous night and they were for his collection. WASHINGTON stated he gave money to an individual, who he was unwilling to identify, and together they purchased a total of eight (8) unfinished lowers from EP

8

Armory. WASHINGTON stated four (4) lowers were for WASHINGTON and the other four (4) were for the unidentified individual. The unidentified individual placed the order, had them shipped to their residence, and then brought them over to WASHINGTON to build. WASHINGTON stated he believed the lowers were delivered last Thursday (referring to September 28, 2023). WASHINGTON stated the four (4) PMFs he built for the unidentified individual were picked up by the unidentified individual that morning.

16.     Affiant also asked WASHINGTON for consent to search his cellular telephone, which WASHINGTON denied. Your affiant did inquire with WASHINGTON what type of cellular telephone WASHINGTON owned and WASHINGTON stated it was an Android. For most of the interview WASHINGTON did have his cellular device concealed on his person but did take the cellular telephone out during the interview allowing your affiant to observe the device and your affiant believes based on training and experience that WASHINGTON'S cellular telephone was in fact an Android device and not an Apple iPhone. Your affiant observed WASHINGTON'S cellular telephone to be a touchscreen device in a dark colored phone case. Furthermore, WASHINGTON provided his telephone number as being 414-379-5631 to your affiant.

**Evidence Connecting Kelvin Henry to: (1) the Four Privately Made Firearms; (2) 4308 N. 66th Street, Milwaukee, WI; (3) 2628 N. 48th Street, Milwaukee, WI; and (4) a 2014 brown Hyundai Equus sedan bearing Wisconsin license plate number ARC7738**

17.     Within the same basement area where jigs and other associated items were observed inside WASHINGTON's residence, officers located an open USPS box with shipping label torn off from "Happy Bear" and a billing invoice from EP Armory dated 09/23/2023, order #BTX126966, showed a delivery going to "Kevin Henry" at 4308 N 66th Street, Milwaukee, WI

9

53216 for eight (8) black EP80-2 (AR-15 Lowers), telephone number 414-484-5019, and email address mybmw326@gmail.com (**Target Account #2**).

18. Your affiant found that the information on this document is consistent with WASHINGTON's admission that he provided four (4) completed PMFs to the person who ordered eight (8) lowers from EP Armory that WASHINGTON believed were received on approximately September 28, 2023.

19. Your affiant was able to identify "Kevin Henry" as Kelvin HENRY ("HENRY"), DOB: 6/6/1979, who is a convicted felon. Your affiant conducted a criminal history query, through the National Crime Information Center ("NCIC"), for HENRY which resulted in identifying the following felony convictions:

 a. A June 5, 2002, Milwaukee County Circuit Court Case Number 2001CF006492 felony conviction for Manufacture/Deliver Cocaine.

 b. A November 24, 2004, Milwaukee County Circuit Court Case number 2004CF002000 felony conviction for Armed Robbery and Reckless Injury 1st Degree.

20. Your affiant is aware, through a separate recent MPD criminal investigation, that "Kevin Henry" is an alias utilized by HENRY. Affiant also learned HENRY is currently on extended supervision for 1st Degree Reckless Injury and Armed Robbery with Use of Force.

21. ATF TFO Paul Martinez contacted the Wisconsin Department of Community Corrections ("WI DOCC") and learned the following regarding HENRY'S extended supervision with WI DOCC: HENRY'S current WI DOCC address is 2628 N. 48th Street, Milwaukee, WI 53210. WI DOCC stated HENRY moved to 2628 N. 48th Street in August of 2023 and has had only one (1) home visit at this address which occurred on September 11, 2023. HENRY also has

telephone number 414-484-5019 listed as his telephone number with WI DOCC. This is the same telephone number used on the EP Armory invoice, causing your affiant to further believe that HENRY is the person to whom WASHINGTON provided the completed four (4) PMFs on the morning of the search warrant.

22.     Additionally, on HENRY'S list of contacts registered with the WI DOCC, HENRY lists the address of 4308 N. 66th Street, Milwaukee, WI 53216 as being the residence of his cousin, Anthony GLENN (hereinafter "A. GLENN"), and aunt, Michelle GLENN (hereinafter "M. GLENN"). This is the address listed on the EP Armory invoice where HENRY had the eight (8) EP Armory unfinished lowers shipped. Your affiant conducted a criminal history check for A. GLENN and M. GLENN, through NCIC, and learned neither are prohibited from possessing firearms and/or ammunition. It is important to note, through a query of a law enforcement database that your affiant has used in the past and found to be reliable, that there was also an Anthony GLENN SR (hereinafter "A. GLENN SR") associated to 4308 N. 66th Street, Milwaukee, WI. A review of A. GLENN SR'S criminal history revealed a felony conviction for Aggravated Battery/Intent-Bodily Harm on or about July 19, 1993, in Milwaukee County Circuit Court, Case Number F-923059.

23.     Your affiant queried HENRY through the Wisconsin Circuit Court Access Page (CCAP) and learned HENRY has an open misdemeanor case in Milwaukee County for Battery Domestic Violence, case # 2023CM002110. In the "Court Record" notes, for the above-listed Milwaukee County Circuit Court case, as of August 8, 2023, HENRY lists his current residence as 4308 N. 66th Street, Milwaukee, WI 53216. Affiant also learned that HENRY had a pre-trial conference regarding this case scheduled for October 9, 2023, at 0830hrs. According to CCAP records, at no time between August 8, 2023, and October 9, 2023, did HENRY update or change

11

his address with the court. Therefore, on the date when the eight (8) lowers were ordered from EP Armory and shipped to 4308 N. 66th Street, Milwaukee, WI. HENRY listed that same address as his address with the court. This further confirms for your affiant that HENRY is the individual who ordered the eight (8) lowers from EP Armory and, thus, is the same person to whom WASHINGTON furnished the four (4) completed PMFs.

24.     Your affiant reviewed data provided by EP Armory for the purchase made by "Kevin Henry" from their online firearms retail store. Your affiant observed this was the only order made by "Kevin Henry" from EP Armory. The order was shipped on September 25, 2023, through standard shipping, to 4308 N. 66th Street, Milwaukee, WI and had tracking number 9405 5112 0620 9577 2532 61 associated to the order. Your affiant learned, through the United States Postal Service (hereinafter "USPS"), that a search of the above-listed tracking number through USPS's databases showed the order was delivered on October 2, 2023, at approximately 1102hrs and was "left with individual." Your affiant believes the USPS documenting HENRY'S order as being "left with individual" refers to someone at the 4308 N. 66th Street, Milwaukee, WI being present when the order was delivered and accepted the package from USPS. Your affiant notes that this is consistent with and corroborates WASHINGTON's admissions regarding his manufacturing and transferring of PMFs. Specifically, WASHINGTON admitted that he built the four (4) PMFs for the unidentified individual (believed by your affiant to be HENRY) prior to WASHINGTON's October 4, 2023, interview. USPS records show that the eight (8) lowers were, in fact, delivered two days before that interview and, thus, were available for WASHINGTON to use to make completed PMFs that night.

25.     WASHINGTON'S statement establishes that (1) WASHINGTON provided money to a person he declined to identify for that person to acquire unfinished 80% firearm lowers; (2)

that person ordered eight (8) unfinished lowers from EP Armory; (3) that person supplied WASHINGTON with the eight (8) unfinished lowers; (4) WASHINGTON used these unfinished lowers to manufacture eight (8) PMFs; (5) WASHINGTON supplied the person who ordered the unfinished lowers with four (4) of the completed PMFs on the morning of the search warrant (October 4, 2023); and (6) the remaining four (4) PMFs were in WASHINGTON's residence. Your affiant believes WASHINGTON's statement is reliable because it was, in part, made against his penal interest, and because aspects of his statement were corroborated by independent sources. The markings on the lowers on the four (4) completed PMFs found in WASHINGTON's house bear the same markings as those listed for sale on EP Armory's website and are consistent with the model number listed on the recovered EP Armory invoice. The shipping address on the EP Armory invoice is the same address HENRY lists with the Milwaukee County Circuit Court in his open criminal case. It is also an address HENRY provided as a relative's address to the WI DOCC. Further, the phone number listed on the EP Armory invoice is the same number HENRY provided to WI DOCC. Finally, "Kevin Henry" is a known alias for HENRY. In fact, Kevin D. Henry is a listed A.K.A. on CCAP records for HENRY's open Milwaukee County criminal case. Based upon all of this, your affiant believes HENRY is the unidentified individual who ordered the lowers and subsequently acquired the four (4) completed PMFs from WASHINGTON'S residence on the morning of October 4, 2023.

26. Your affiant knows, from training and experience, that individuals like HENRY, who are convicted felons and are unable to obtain firearms through the legal gun market due to their prohibited status, are forced to rely on non-prohibited individuals to procure firearms from the legal gun market or manufacture and/or have others manufacture PMFs on their behalf. Furthermore, your affiant knows, from training and experience, prohibited persons tend to hold

13

onto firearms they can procure for long periods of time due to their inability to obtain firearms through a legal market. Furthermore, unlike narcotics which can be consumed and/or disposed of expeditiously, firearms tend to be kept and utilized for long periods of time. As such, your affiant believes HENRY is still in possession of the four (4) AR pistols WASHINGTON built for HENRY.

27. As previously documented, your affiant was able to identify HENRY through a separate, recent criminal investigation. Through that investigation, officers were aware HENRY drove a 2014 brown Hyundai Equus sedan bearing Wisconsin license plate number ARC7738.

28. Your affiant queried the above-listed license plate number through law enforcement databases which revealed HENRY as being the registered owner of the vehicle and has a vehicle registration expiration date of May 31, 2024. Your affiant conducted a query of HENRY'S above-listed license plate number through a law enforcement database which collects, tracks, and stores license plate reader (LPR) hits on vehicles from law enforcement agencies and commercial companies. Your affiant has used this database in the past and found it to be reliable. The query revealed approximately forty-seven (47) LPR hits for HENRY'S vehicle all taken between May 31, 2023 to October 8, 2023. Of those forty-seven (47) LPR hits, approximately eighteen (18) LPR hits occurred between 2616 N. 48th Street, Milwaukee, WI and 2626 N. 48th Street, Milwaukee, WI from August 7, 2023 to October 8, 2023. Affiant did not locate any LPR hits for HENRY'S vehicle at the 66th Street residence.

29. In October of 2023, your affiant along with other investigators conducted several rounds of surveillance on the 2600 block of North 48th Street, Milwaukee, WI 53210. During each surveillance operation, investigators observed the 2014 brown Hyundai Equus sedan bearing Wisconsin license plate number ARC7738 approximately parked in front of duplexes located at

14

2634-2636 and 2628-2630 N. 48th Street, Milwaukee, WI. Specifically, on October 15, 2023, TFO Martinez observed HENRY exit the door of 2628 N. 48th Street, Milwaukee, WI, enter the driver seat of the 2014 brown Hyundai Equus, and drive away.

30. Investigators conducted a utility check on 2628 N. 48th Street, Milwaukee, WI, which is HENRY'S WI DOCC address and the address investigators observed HENRY exiting on October 15, 2023. The purpose of the query was to see if investigators could further link HENRY to the above-listed address. As a result, investigators learned utilities for 2628 N. 48th Street, Milwaukee, WI have been registered to Precious R. PULLEY (hereinafter "PULLEY") since August 3, 2023. Investigators are aware, from the previous investigation into HENRY, that PULLEY and HENRY have been together for many years and PULLEY was a live-in girlfriend of HENRY.

31. On or about October 24, 2023, your affiant conducted another query of HENRY'S vehicle (2014 brown Hyundai Equus bearing Wisconsin license plate number ARC7738) through the same law enforcement database which collects, tracks, and stores license plate reader (LPR) hits on vehicles from law enforcement agencies and commercial companies. Since the previous query, which was completed before the surveillance operation occurring on October 9, 2023, your affiant observed seven (7) additional LPR hits occurring between October 10, 2023, to October 24, 2023. Specifically, six (6) of these hits occurred between 2622 N. 48th Street, Milwaukee, WI to 2627 N. 48th Street, Milwaukee, WI between the dates of October 10, 2023, to October 24, 2023. This brings the total amount of LPR hits to approximately fifty-four (54) and the total amount of LPR hits in the 2600 block of N. 48th Street to twenty-four (24).

32. Based on the fact HENRY'S WI DOCC address is 2628 N. 48th Street, Milwaukee, WI, that HENRY's vehicle has numerous LPR hits in the area of 2628 N. 48th Street, Milwaukee,

15

WI between August 2023 to the present, investigators observing HENRY exit 2628 N. 48th Street, Milwaukee, WI during a surveillance operation, and the utilities for 2628 N. 48th Street, Milwaukee, WI being registered to HENRY'S girlfriend, investigators believe HENRY is currently residing at 2628 N. 48th Street, Milwaukee, WI.

33. Based on the facts above, the affiant believes that HENRY is having firearms parts shipped to the 4308 N. 66th Street, Milwaukee, WI to avoid detection at his residence located at 2628 N. 48th Street.

34. The 4308 N. 66th Street, Milwaukee, WI is described as a single-story residence with red brick and white siding and a black asphalt shingled roof. The front entrance door of 4308 N. 66th Street, Milwaukee, WI is located on the Westside of the residence with a raised front patio leading to the front door which has a black metal security door and a brown interior door. The numbers "4308" are located directly to the South of the front door and are on a white placard with black numbers. The property also has a detached garage with white siding and a single-vehicle garage door at the rear of the residence, connected to the rear alleyway, with the garage door entrance facing East.

35. 2628 N. 48th Street, Milwaukee, WI is described as a three-story residential duplex building with beige siding and a black asphalt shingled roof. The front entrance door of 2628 N. 48th Street, Milwaukee, WI is located on the Westside of the residence, is the Southernmost door, and has multiple steps leading to the front door which has a black metal security door and a wood interior door. The attached unit, 2630 N. 48th Street, has a separate front entrance on the Westside of the residence and is the Northern most door. Each individual residential unit has its own entrance door. The numbers "2628" are located on a brick pillar to the South of the front door and are on a white placard with black numbers.

36.     On or about October 4, 2023, your affiant made a preservation request through Google LLC's LERS system for WASHINGTON'S account: dkwash36@gmail.com (TARGET ACCOUNT #1).

37.     On or about October 6, 2023, your affiant made a preservation request through Google LLC's LERS system for HENRY'S account: mybmw326@gmail.com (TARGET ACCOUNT #2).

38.     Accordingly, based upon the information contained in this affidavit and based on my training and experience, I believe WASHINGTON and HENRY utilize the TARGET ACCOUNTS to communicate and document the manufacturing, trafficking, and unlawful possession of PMFs/firearms. As previously stated in this affidavit, your affiant knows, through the review of order forms from online firearm retailer websites, that WASHINGTON and HENRY utilized the TARGET ACCOUNTS when placing orders from online firearm retailers. Additionally, during the non-custodial interview of WASHINGTON, WASHINGTON provided your affiant with TARGET ACCOUNT #1 as being his email address. The content of the TARGET ACCOUNTS will assist case agents with documenting any communication between HENRY, WASHINGTON, and others known and unknown, locating additional orders from online firearms retailers, and identifying the persons to whom WASHINGTON sold, built, and/or bartered/traded PMFs.  Further, a review of all of the content of Target Account #2 (HENRY's account) will help confirm that said account is used exclusively by HENRY—further connecting him to the EP Armory order form involving the eight (8) unfinished lowers.  In sum, your affiant believes that there is probable cause to believe that WASHINGTON and HENRY are utilizing the TARGET ACCOUNTS to communicate and as such will contain for evidence, fruits, and instrumentalities of violations of violations of Title 18 United States Code, Sections 922(a)(1)(A) (Engaging in the

17

Business of Importing/Manufacturing/ Dealing in Firearms), 922(d)(Sale or Transfer of a Firearm to a Prohibited Person), 922(g)(1)(Unlawful Possession or Receipt of a Firearm by a Prohibited Person), and Title 18 United States Code, Section 933(Trafficking in Firearms), as further described in Attachment B.

## **BACKGROUND CONCERNING GOOGLE**[1]

39.     Google is a United States company that offers to the public through its Google Accounts a variety of online services, including email, cloud storage, digital payments, and productivity applications, which can be accessed through a web browser or mobile applications. Google also offers to anyone, whether or not they have a Google Account, a free web browser called Google Chrome, a free search engine called Google Search, a free video streaming site called YouTube, a free mapping service called Google Maps, and a free traffic tracking service called Waze. Many of these free services offer additional functionality if the user signs into their Google Account.

40.     In addition, Google offers an operating system ("OS") for mobile devices, including cellular phones, known as Android. Google also sells devices, including laptops, mobile phones, tablets, smart speakers, security cameras, and wireless routers. Users of Android and Google devices are prompted to connect their device to a Google Account when they first turn on the device, and a Google Account is required for certain functionalities on these devices.

---

[1]     The information in this section is based on information published by Google on its public websites, including, but not limited to, the following webpages:  the "Google legal policy and products" page available to registered law enforcement at lers.google.com; product pages on support.google.com; or product pages on about.google.com.

41.     Signing up for a Google Account automatically generates an email address at the domain gmail.com. That email address will be the log-in username for access to the Google Account.

42.     Google advertises its services as "One Account. All of Google working for you." Once logged into a Google Account, a user can connect to Google's full suite of services offered to the general public, described in further detail below. In addition, Google keeps certain records indicating ownership and usage of the Google Account across services, described further after the description of services below.

43.     Google provides email services (called Gmail) to Google Accounts through email addresses at gmail.com or enterprise email addresses hosted by Google. Gmail can be accessed through a web browser or a mobile application. Additional email addresses ("recovery," "secondary," "forwarding," or "alternate" email addresses) can be associated with the Google Account by the user. Google preserves emails associated with a Google Account indefinitely, unless the user deletes them.

44.     Google provides an address book for Google Accounts through Google Contacts. Google Contacts stores contacts the user affirmatively adds to the address book, as well as contacts the user has interacted with in Google products. Google Contacts can store up to 25,000 contacts. Users can send messages to more than one contact at a time by manually creating a group within Google Contacts or communicate with an email distribution list called a Google Group. Users have the option to sync their Android mobile phone or device address book with their account so it is stored in Google Contacts. Google preserves contacts indefinitely, unless the user deletes them. Contacts can be accessed from the same browser window as other Google products like Gmail and Calendar.

19

45.     Google integrates its various services to make it easier for Google Accounts to access the full Google suite of services. For example, users accessing their Google Account through their browser can toggle between Google Services via a toolbar displayed on the top of most Google service pages, including Gmail and Drive. Google Hangout, Meet, and Chat conversations pop up within the same browser window as Gmail. Attachments in Gmail are displayed with a button that allows the user to save the attachment directly to Google Drive. If someone shares a document with a Google Account user in Google Docs, the contact information for that individual will be saved in the user's Google Contacts. Google Voice voicemail transcripts and missed call notifications can be sent to a user's Gmail account. And if a user logs into their Google Account on the Chrome browser, their subsequent Chrome browser and Google Search activity is associated with that Google Account, depending on user settings.

46.     When individuals register with Google for a Google Account, Google asks users to provide certain personal identifying information, including the user's full name, telephone number, birthday, and gender. If a user is paying for services, the user must also provide a physical address and means and source of payment.

47.     Google provides several messaging services including Duo, Messages, Hangouts, Meet, and Chat. These services enable real-time text, voice, and/or video communications through browsers and mobile applications, and also allow users to send and receive text messages, videos, photos, locations, links, and contacts. Google may retain a user's messages if the user hasn't disabled that feature or deleted the messages, though other factors may also impact retention. Google does not retain Duo voice calls, though it may retain video or voicemail messages.

48.     Google Drive is a cloud storage service automatically created for each Google Account. Users can store an unlimited number of documents created by Google productivity

20

applications like Google Docs (Google's word processor), Google Sheets (Google's spreadsheet program), Google Forms (Google's web form service), and Google Slides, (Google's presentation program). Users can also upload files to Google Drive, including photos, videos, PDFs, and text documents, until they hit the storage limit. Users can set up their personal computer or mobile phone to automatically back up files to their Google Drive Account. Each user gets 15 gigabytes of space for free on servers controlled by Google and may purchase more through a subscription plan called Google One. In addition, Google Drive allows users to share their stored files and documents with up to 100 people and grant those with access the ability to edit or comment. Google maintains a record of who made changes when to documents edited in Google productivity applications. Documents shared with a user are saved in their Google Drive in a folder called "Shared with me." Google preserves files stored in Google Drive indefinitely unless the user deletes them.

49. Google offers a cloud-based photo and video storage service called Google Photos. Users can share or receive photos and videos with others. Google Photos can be trained to recognize individuals, places, and objects in photos and videos and automatically tag them for easy retrieval via a search bar. Users have the option to sync their mobile phone or device photos to Google Photos. Google preserves files stored in Google Photos indefinitely unless the user deletes them.

50. Google offers a map service called Google Maps which can be searched for addresses or points of interest. Google Maps can provide users with turn-by-turn directions from one location to another using a range of transportation options (driving, biking, walking, etc.) and real-time traffic updates. Users can share their real-time location with others through Google Maps by using the Location Sharing feature. And users can find and plan an itinerary using Google Trips.

21

A Google Account is not required to use Google Maps, but if users log into their Google Account while using Google Maps, they can save locations to their account, keep a history of their Google Maps searches, and create personalized maps using Google My Maps. Google stores Maps data indefinitely unless the user deletes it.

51.     Google collects and retains data about the location at which Google Account services are accessed from any mobile device, as well as the periodic location of Android devices while they are in use. This location data can derive from a range of sources, including GPS data, Wi-Fi access points, cell-site locations, geolocation of IP addresses, sensor data, user searches, and Bluetooth beacons within range of the device. According to Google, this location data may be associated with the Google Account signed-in or registered to the device when Location Services are activated on the device and the user has enabled certain global settings for their Google Account, such as Location History or Web & App Activity tracking. The data retained may be both precision location data, like latitude and longitude coordinates derived from GPS, and inferential location data, such as the inference that a Google Account is in New York because it conducts a series of searches about places to eat in New York and directions from one New York location to another. Precision location data is typically stored by Google in an account's Location History and is assigned a latitude-longitude coordinate with a meter radius margin of error. Inferential data is stored with an account's Web & App Activity. Google maintains these records indefinitely for accounts created before June 2020, unless the user deletes it or opts to automatically delete their Location History and Web & App Activity after three or eighteen months. Accounts created after June 2020 auto-delete Location History after eighteen months unless the user affirmatively changes the retention setting to indefinite retention or auto-deletion at three months.

22

52.     Google offers a free web browser service called Google Chrome which facilitates access to the Internet. Chrome retains a record of a user's browsing history and allows users to save favorite sites as bookmarks for easy access. If a user is logged into their Google Account on Chrome and has the appropriate settings enabled, their browsing history, bookmarks, and other browser settings may be saved to their Google Account in a record called My Activity.

53.     Google offers a service called Google Voice through which a Google Account can be assigned a telephone number that can be used to make, record, and forward phone calls and send, receive, store, and forward SMS and MMS messages from a web browser, mobile phone, or landline. Google Voice also includes a voicemail service. Records are stored indefinitely unless the user deletes them.

54.     Google also offers a video platform called YouTube that offers Google Accounts the ability to upload videos and share them with others. Users can create a YouTube channel where they can upload videos, leave comments, and create playlists available to the public. Users can subscribe to the YouTube channels of others, search for videos, save favorite videos, like videos, share videos with others, and save videos to watch later. More than one user can share control of a YouTube channel. YouTube may keep track of a user's searches, likes, comments, and change history to posted videos. YouTube also may keep limited records of the IP addresses used to access particular videos posted on the service. Users can also opt into a setting to track their YouTube Watch History. For accounts created before June 2020, YouTube Watch History is stored indefinitely, unless the user manually deletes it or sets it to auto-delete after three or eighteen months. For accounts created after June 2020, YouTube Watch History is stored for three years, unless the user manually deletes it or sets it to auto-delete after three or eighteen months.

55.     Google typically retains and can provide certain transactional information about the creation and use of each account on its system. Google captures the date on which the account was created, the length of service, log-in times and durations, the types of services utilized by the Google Account, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via Google's website or using a mobile application), details about the devices used to access the account, and other log files that reflect usage of the account. In addition, Google keeps records of the Internet Protocol ("IP") addresses used to register the account and accept Google's terms of service, as well as the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the Google Account.

56.     Google maintains the communications, files, and associated records for each service used by a Google Account on servers under its control. Even after a user deletes a communication or file from their Google Account, it may continue to be available on Google's servers for a certain period of time.

57.     In my training and experience, evidence of who was using a Google account and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above.  This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

58.     Based on my training and experience, messages, emails, voicemails, photos, videos, documents, and internet searches are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.  Thus, stored

24

communications and files connected to a Google Account may provide direct evidence of the offenses under investigation.

59.     In addition, the user's account activity, logs, stored electronic communications, and other data retained by Google can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

60.     Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (*e.g.,* information indicating a plan to commit a crime), or consciousness of guilt (*e.g.,* deleting account information in an effort to conceal evidence from law enforcement).

61.     Other information connected to the use of a Google account may lead to the discovery of additional evidence. For example, the apps downloaded from the Google Play store may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators. In addition, emails, instant messages, Internet activity,

documents, and contact and calendar information can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

62.     Therefore, Google's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Google services.  In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

63.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Google, LLC to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

64.     Based on the foregoing, I request that the Court issue the proposed search warrant.

65.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.  The government will execute this warrant by serving it on Google.  Because the warrant will be served on Google, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

26

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with dkwash36@gmail.com ("TARGET ACCOUNT #1") and mybmw326@gmail.com ("TARGET ACCOUNT #2") that is stored at premises owned, maintained, controlled, or operated by Google LLC a company headquartered at 1600 Amphitheatre Parkway, Mountain View, CA 94043.

## ATTACHMENT B

### Particular Things to be Seized

**I.      Information to be disclosed by Google LLC ("Google")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Google, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Google, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f) on October 4, 2023 and October 6, 2023 with the Google Reference Number 44092138 and 44304102, Google is required to disclose to the government for each account or identifier listed in Attachment A the following information from December 1, 2018 to the present unless otherwise indicated:

    a.      All business records and subscriber information, in any form kept, pertaining to the Account, including:

    b.      All records or other information regarding the identification of the accounts, commonly known as subscriber or registration information, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative email addresses, methods of connecting, log files, and means and source of payment (including any credit or bank account number).

    c.      The types of services utilized.

    d.      The contents of all emails associated with the accounts, including stored or preserved copies of emails sent to and from the accounts, draft emails, the source, and destination addresses associated with each email, the date and time at which each email was sent, the size and length of each email, and any attachments associated with emails.

    e.      The details of electronic devices used to access such services such as serial numbers and other unique device identification numbers.

f.     All other records or other information stored using the accounts, including address books, contact lists, calendar data, pictures and videos, location history, messages, search and browsing history, and files.

g.     All records pertaining to communications between the provider and any person(s) regarding the accounts, including contacts with support services and records of actions taken.

Google is hereby ordered to disclose the above information to the government within **fourteen (14)** days of issuance of this warrant.

## Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence, or instrumentalities of, or contraband from, violations of Title 18 United States Code, Sections 922(a)(1)(A) (Engaging in the Business of Importing/Manufacturing/ Dealing in Firearms), 922(d)(Sale or Transfer of a Firearm to a Prohibited Person), 922(g)(1)(Unlawful Possession or Receipt of a Firearm by a Prohibited Person), and Title 18 United States Code, Section 933(Trafficking in Firearms) involving WASHINGTON and HENRY since December 1, 2018, including, for each user ID identified on Attachment A, information pertaining to the following matters:

(a)     The possession of firearms/machineguns/NFA weapons.

(b)     Evidence of illegal firearms manufacturing and trafficking.

(c)     Evidence indicating how and when the Account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

(d)     Evidence indicating the Account owner's state of mind as it relates to the crime under investigation;

(e)     The identity of the person(s) who created or used the Account, including records that help reveal the whereabouts of such person(s).

2

(f)     The identity of the person(s) who communicated with the user ID about matters relating to the sale or purchase of illegal narcotics and firearms, NFA weapons and/or machineguns, including records that help reveal their whereabouts.

**CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS
RECORDS PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)**

I, _____, attest, under penalties of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this declaration is true and correct. I am employed by Google LLC ("Google"), and my official title is _____. I am a custodian of records for Google. I state that each of the records attached hereto is the original record or a true duplicate of the original record in the custody of Facebook, and that I am the custodian of the attached records consisting of _____ (pages/CDs/kilobytes). I further state that:

a.      all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Google, and they were made by Google as a regular practice; and

b.      such records were generated by Google's electronic process or system that produces an accurate result, to wit:

1.      the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Google in a manner to ensure that they are true duplicates of the original records; and
2.      the process or system is regularly verified by Google, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____        _____
Date                                                    Signature

4

AO 93C (08/18) Warrant by Telephone or Other Reliable Electronic Means

☑ Original    ☐

CLERK'S OFFICE
A TRUE COPY
Nov 22, 2023
s/ D. Olszewski

Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

### for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of ) | |
| *(Briefly describe the property to be searched* ) | Case No.   23   MJ   225 |
| *or identify the person by name and address)* ) | |
| WASHINGTON & HENRY Google Accts: ) | **Matter No.: 2023R00375** |
| dkwash36@gmail.com & ) | |
| mybmw326@gmail.com; (See Attachments) ) | |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:    Any authorized law enforcement officer

      An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

  See Attachment A; over which this Court has jurisdiction pursuant to 18 U.S.C. §§ 2703 and 2711 and Federal Rule of Criminal Procedure 41.

      I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

  See Attachment B.

                                         12/06/2023

    **YOU ARE COMMANDED** to execute this warrant on or before _____ *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.    ☐ at any time in the day or night because good cause has been established.

    Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

    The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Hon. William E. Duffin _____ .
                                                                            *(United States Magistrate Judge)*

    ☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

    ☐ for _____ days *(not to exceed 30)*    ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:   11/22/2023 at 11:00 a.m.         *William E. Duffin*
                                                          *Judge's signature*

City and state:    Milwaukee, WI          Hon. William E. Duffin, U.S. Magistrate Judge
                                                           *Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

       I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with dkwash36@gmail.com ("TARGET ACCOUNT #1") and mybmw326@gmail.com ("TARGET ACCOUNT #2") that is stored at premises owned, maintained, controlled, or operated by Google LLC a company headquartered at 1600 Amphitheatre Parkway, Mountain View, CA 94043.

**ATTACHMENT B**

**Particular Things to be Seized**

I. **Information to be disclosed by Google LLC ("Google")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Google, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Google, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f) on October 4, 2023 and October 6, 2023 with the Google Reference Number 44092138 and 44304102, Google is required to disclose to the government for each account or identifier listed in Attachment A the following information from December 1, 2018 to the present unless otherwise indicated:

    a.    All business records and subscriber information, in any form kept, pertaining to the Account, including:

    b.    All records or other information regarding the identification of the accounts, commonly known as subscriber or registration information, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative email addresses, methods of connecting, log files, and means and source of payment (including any credit or bank account number).

    c.    The types of services utilized.

    d.    The contents of all emails associated with the accounts, including stored or preserved copies of emails sent to and from the accounts, draft emails, the source, and destination addresses associated with each email, the date and time at which each email was sent, the size and length of each email, and any attachments associated with emails.

    e.    The details of electronic devices used to access such services such as serial numbers and other unique device identification numbers.

f.      All other records or other information stored using the accounts, including address books, contact lists, calendar data, pictures and videos, location history, messages, search and browsing history, and files.

g.      All records pertaining to communications between the provider and any person(s) regarding the accounts, including contacts with support services and records of actions taken.

Google is hereby ordered to disclose the above information to the government within **fourteen (14)** days of issuance of this warrant.

### Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence, or instrumentalities of, or contraband from, violations of Title 18 United States Code, Sections 922(a)(1)(A) (Engaging in the Business of Importing/Manufacturing/ Dealing in Firearms), 922(d)(Sale or Transfer of a Firearm to a Prohibited Person), 922(g)(1)(Unlawful Possession or Receipt of a Firearm by a Prohibited Person), and Title 18 United States Code, Section 933(Trafficking in Firearms) involving WASHINGTON and HENRY since December 1, 2018, including, for each user ID identified on Attachment A, information pertaining to the following matters:

(a)      The possession of firearms/machineguns/NFA weapons.

(b)      Evidence of illegal firearms manufacturing and trafficking.

(c)      Evidence indicating how and when the Account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

(d)      Evidence indicating the Account owner's state of mind as it relates to the crime under investigation;

(e)      The identity of the person(s) who created or used the Account, including records that help reveal the whereabouts of such person(s).

2

(f)     The identity of the person(s) who communicated with the user ID about matters relating to the sale or purchase of illegal narcotics and firearms, NFA weapons and/or machineguns, including records that help reveal their whereabouts.